IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

| | |
|---|---|
| CHRIS HOVERMAN, an individual,<br><br>Plaintiff,<br><br>vs.<br><br>CITIMORTGAGE, INC., a New York corporation, and DOES 1-10,<br><br>Defendants. | MEMORANDUM DECISION AND ORDER<br><br>Case No. 2:11-cv-00118-DAK<br><br>Judge Dale A. Kimball |

This matter is before the court on a motion by Defendant CitiMortgage, Inc. to dismiss Plaintiff Chris Hoverman's Complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. This Motion to Dismiss is fully briefed and neither party has requested a hearing. The court has concluded that a hearing would not significantly aid it in its determination of this motion. Having fully considered the motion, memoranda, and other materials submitted by the parties and the facts and law relevant to this motion, the court enters the following Memorandum Decision and Order.

## BACKGROUND

Because this is a motion to dismiss, and the court must assume for purposes of the instant motion that the factual allegations are true, the court takes the following asserted facts from the Plaintiff's Complaint. Plaintiff Chris Hoverman is a citizen of Connecticut who currently resides in Connecticut. Defendant CitiMortgage Inc. ("Citi") is a New York company, with its principal

1

place of business in New York, which does business in the state of Utah.

In March of 2007, Hoverman purchased for value a piece of property located in Heber, Utah, in Wasatch County. Hoverman obtained a loan from Citi in the amount of $1,950,000.00 in order to fund the purchase of the property. As part of the loan process, Hoverman signed both a Promissory Note ("Note"), which named Citi as the Lender, and a Deed of Trust, which named Citi as the Lender and Beneficiary but which named First American Title Company as the Trustee. Although Citi was named as the lender in both documents, Citi's actual role in the loan transaction was to advance funds to Hoverman from other investors who were not part of the contract with Hoverman.

In July of 2010, Hoverman observed a large discrepancy in the loan to value ratio of his property and called Citi to attempt to explore available options, such as deeding the property in lieu of foreclosure or short selling the property, but, according to Hoverman, Citi did not provide him with any information regarding the process. Hoverman contacted Citi on numerous other occasions to obtain information about who owned the Note, about who was being paid for it and in what amounts, and about who had the authority to foreclose on Hoverman's Utah property. Hoverman claims that Citi failed to respond to any of these inquiries made by Hoverman.

Hoverman was delinquent in some of his payments on the loan for the Heber property, although the extent of his delinquent payments is not clear. The Note, which specifies the terms of the loan between Hoverman and Citi, explains that any delinquent payments cause the borrower to be in default on the loan. Although Citi's actions in response to Hoverman's default are not clear, Citi has apparently initiated the Trustee's Sale process on the property but has not yet officially foreclosed on the property.

Hoverman brought this case before the court to clarify Citi's authority to foreclose on his property. After Hoverman filed his Complaint, Citi submitted a Motion to Dismiss all six of Hoverman's Causes of Action.

**DISCUSSION**

Defendant Citi moves to dismiss Plaintiff Chris Hoverman's Complaint. Hoverman's Complaint contains the following six causes of action: (1) Breach of Contract, (2) Breach of Covenant of Good Faith and Fair Dealing, (3) Intentional or Negligent Misrepresentation, (4) Violation of Utah Consumer Protection Statutes, (5) Quiet Title, and (6) Declaratory and Injunctive Relief.

On a motion to dismiss, "the court presumes the truth of all well-pleaded facts in the complaint, but need not consider conclusory allegations," which "are allegations that do not allege the factual basis for the claim." *Margae, Inc. v. Clear Link Tech.*, 620 F. Supp. 2d 1284, 1285 (D. Utah 2009) (citing *Tal v. Hogan*, 453 F.3d 1244, 1252 (10th Cir. 2006), *cert. denied*, 549 U.S. 1209 (2007); and *Mitchell v. King*, 537 F.2d 385, 386 (10th Cir. 1976)). In order for a complaint to survive a motion to dismiss, it must "contain enough facts to state a claim to relief that is plausible on its face," drawing "all reasonable inferences . . . in the non-moving party's favor." *Id.* (citing *Bell Atlantic v. Twombly*, 550 U.S. 544, 127 S. Ct. 1955, 1969 (2007)).

In addition to using well-pleaded facts from the complaint, the court is also able to consider documents that are "referred to in the complaint," that are "central to plaintiff's claims," and that are submitted to the court by the defendant, if the submissions qualify as "indisputably authentic cop[ies]." *GFF Corp. v. Assoc. Wholesale Grocers, Inc.*, 130 F.3d 1381, 1384 (10th Cir. 1997) (internal citations omitted). Therefore, in the present case, both the Note and the Trust

Deed will be considered in order to determine if Hoverman has sufficiently stated a claim for relief.

## I. BREACH OF CONTRACT

Hoverman's First Cause of Action claims that Citi breached its contract with Hoverman by identifying itself as the lender without lending funds to Hoverman, by invoking the power of sale as the lender, and by securitizing Hoverman's loan without explicit or implicit consent to do so by Hoverman. Citi argues that this cause of action should be dismissed because Hoverman failed to allege facts in support of his legal conclusions regarding securitization and because securitization is irrelevant in determining the enforceability of a note and deed of trust.

To constitute a breach of contract, (1) a contract must exist, (2) the party seeking recovery must be performing his or her part of the contract, (3) the other party must breach the contract, and (4) damages must result from the breach of the contract. *Bair v. Axiom Design, LLC*, 2001 UT 20, ¶ 14, 20 P.3d 388 (citing *Nuttall v. Berntson*, 30 P.2d 738, 741 (Utah 1934)). Although there is no dispute that a contract between Hoverman and Citi existed, Hoverman has not sufficiently shown in his Complaint that he performed his part of the contract, that Citi breached its part of the contract, or that Hoverman was damaged in any way by the breach of the contract.

First, Hoverman has not sufficiently alleged that he performed his portion of the contract. Although Hoverman claims that he is not in default, he also admits to delinquent payments, which constitute a default under the terms of the Note. Since Hoverman's statement that he is not in default is a legal conclusion that is not sufficiently supported by facts, it is not considered in determining if Hoverman sufficiently stated a claim for relief. Without that legal conclusion, the court is left with the facts that Hoverman is delinquent in his payments and that those

delinquent payments constitute default. Therefore, Hoverman has not performed his part of the contract with Citi, and his breach of contract claim fails on that basis alone.

However, in addition to his failure to perform his portion of the contract, Hoverman's allegations that Citi breached its portion of the contract fail as a matter of law. Hoverman's claim is based on Citi identifying itself as the lender and performing actions reserved to the lender even though Citi was not the source of the funds that were lent to Hoverman. In making these claims, Hoverman fails to acknowledge that the term "Lender" is a defined term in the documents and that "Lender" is defined to be Citi. The documents do not add any additional requirements for Citi to qualify as the Lender for purposes of the documents, such as being the actual source of the funding. Therefore, for purposes of the Note and Trust Deed in question, Citi is the Lender and is subject to all of the obligations and is authorized to perform all of the actions of the Lender under the terms of the contracts.

Hoverman also argues that Citi breached its portion of the contract by securitizing the loan without the explicit or implicit consent of Hoverman, but Hoverman's allegations again fail as a matter of law. Hoverman again states a legal conclusion in his Complaint, that he "never consented explicitly or implicitly to securitization of [the] loan," (Compl. ¶ 21), but Hoverman's legal conclusion is not consistent with the terms of the Note signed by Hoverman. Specifically, the Note states, "I understand that the Lender may transfer this Note." (Note § 1). The Trust Deed also contains the following specific language: "The Note or a partial interest in the Note (together with this Security instrument) can be sold one or more times without prior notice to Borrower." (Trust Deed § 20). Consequently, the alleged securitization of the Note, even if true, does not breach any contract between Hoverman and Citi.

In addition to Hoverman's claims being inconsistent with the actual contract language, Hoverman also fails to provide any factual support for his allegation that the loan was securitized. Hoverman's general allegations about "the ordinary course of securitization," (Compl. ¶ 33), fail to provide sufficient factual support for his specific claims to elevate those claims beyond mere "conclusory allegations." Hoverman's attempts are similar to those rejected by the court in a previous case because the "only evidence is [the] unsupported observation that some lenders don't keep their loans but instead package up the loans and sell them to investors." *DB Private Wealth Mortgage Ltd. v. Marty*, No. 2:09CV999, 2010 U.S. Dist. LEXIS 7074, at *2 (D. Utah Jan. 28, 2010). The court rejected the claims in that case because they were based "solely on . . . speculation." *Id.* Similarly, in this case, the court rejects Hoverman's claims about the securitization of his loan because they are based solely on speculation due to the ordinary course of securitization.

Finally, Hoverman fails to allege specific facts that the claimed breach of contract resulted in his suffering damages. Although Hoverman states that the alleged breach "materially altered [his] loan experience," (Compl. ¶ 21), he again fails to provide specific facts to support this legal conclusion. Therefore, Hoverman failed to sufficiently allege that Citi's alleged breach of contract resulted in damages to him.

Accordingly, the court dismisses with prejudice Hoverman's cause of action for breach of contract.

## II. BREACH OF COVENANT OF GOOD FAITH AND FAIR DEALING

Hoverman's Second Cause of Action claims that Citi breached its covenant of good faith and fair dealing by failing to respond to Hoverman's numerous written and verbal requests

regarding the authority to foreclose. Citi argues that this cause of action should be dismissed because it is based on Hoverman's demands of Citi that were not contemplated by law or by the parties' agreements.

The implied covenant of good faith and fair dealing, which is inherently part of every contract, requires both parties not to do anything to injure the other party's right to receive the benefits of the contract. *Eggert v. Wasatch Energy Corp.*, 2004 UT 28, ¶ 14, 94 P.3d 193. However, the implied covenant of good faith and fair dealing "cannot be read to establish new, independent rights or duties to which the parties did not agree *ex ante*." *Oakwood Village LLC v. Albertsons, Inc.*, 2004 UT 101, ¶ 45, 104 P.3d 1226.

Citi's alleged failure to respond to Hoverman's requests for information regarding the authority to foreclose did not breach the covenant of good faith and fair dealing. Hoverman has not provided any examples of actions performed by Citi that injured Hoverman's right to receive the benefits of the contract. Hoverman's only specific fact in support of his conclusion that Citi breached the covenant of good faith and fair dealing is that Citi failed to respond to Hoverman's requests regarding the authority to foreclose. However, the failure of Citi to respond to Hoverman's requests did not prevent Hoverman from receiving the loan that was the subject of the contract or from enforcing his portion of the contract. Therefore, Citi's actions did not injure Hoverman's right to receive the benefits of his contract with Citi.

In addition to not injuring Hoverman's right to receive the benefits of the contract, Citi never agreed in any document to disclose the identity of a transferee of the Note that might have the authority to foreclose. Instead, Citi's contract with Hoverman specifically provides that Citi may sell the Note "one or more times without prior notice to Borrower." (Trust Deed ¶ 20).

Therefore, requiring Citi to disclose the information requested by Hoverman would have the effect of establishing a new, independent duty to which the parties did not agree *ex ante*. Because the covenant of good faith and fair dealing cannot be used to establish new duties, Citi's alleged failure to disclose the requested information does not constitute a breach of the covenant of good faith and fair dealing.

Therefore, the court dismisses with prejudice Hoverman's cause of action for breach of the covenant of good faith and fair dealing.

### III. INTENTIONAL OR NEGLIGENT MISREPRESENTATION

Hoverman's Third Cause of Action claims that Citi has engaged in intentional or negligent misrepresentation by claiming to lend money to Hoverman when it did not, by misrepresenting or purposefully withholding the identity of the Note Holder and the Beneficiary, by refusing to respond to Hoverman's numerous requests for information, and by misrepresenting to Hoverman that his loan would not be securitized, all of which misrepresentations Hoverman claims were material. Citi contends that this cause of action should be dismissed because Hoverman has failed to state a claim, much less with sufficient particularity. The court agrees.

In general, a cause of action for negligent misrepresentation is shown by identifying an "'affirmative assertion which is false,'" although a "'material omission'" may also qualify as negligent misrepresentation "where the defendant has a duty to disclose." *Smith v. Frandsen*, 2004 UT 55, ¶ 10-11, 94 P.3d 919 (*quoting Ellis v. Hale*, 373 P.2d 382, 385 (Utah 1962) and *Sugarhouse Fin. Co. v. Anderson*, 610 P.2d 1369, 1373 (Utah 1980)). Negligent misrepresentation differs from intentional misrepresentation only in that negligent misrepresentation may be established without identifying "the intentional mental state necessary

to establish" intentional misrepresentation. *Price-Orem Inv. Co. v. Rollins, Brown, & Gunnell, Inc.*, 713 P.2d 55, 59 n.2 (Utah 1986).

Because both intentional and negligent misrepresentation constitute forms of fraud, *see State v. Kitchen*, 564 P.2d 760,763 (Utah 1977) (defining fraud as an "intentional misrepresentation); *Atkinson v. IHC Hosps. Inc.*, 798 P.2d 733, 737 (Utah 1990) (identifying negligent misrepresentation as a "form of fraud"), the requirements of Fed. R. Civ. P. 9(b) apply even though the claim is not technically a claim for fraud, *see Coroles v. Sabey*, 2003 UT App 339, 79 P.3d 974. Rule 9(b) requires a party to "state with particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b). The particularity requirement of Rule 9(b) is not met by a mere recitation of the elements of fraud or by conclusory allegations that are not supported by relevant facts. *Armed Forces Ins. Exchange v. Harrison*, 2003 UT 14, ¶ 16, 70 P.3d 35.

Because Hoverman has not only failed to state some his claims with the required particularity but has also failed to either allege affirmative assertions made by Citi that were false or establish that Citi omitted material information that it had a duty to disclose, Hoverman has not stated a claim for intentional or negligent misrepresentation.

Although Hoverman offers four examples that he claims constitute misrepresentations, none of the examples qualifies as false affirmative assertions or as omissions in the presence of a duty to disclose. First, Hoverman alleges that Citi falsely claimed to have lent money to Hoverman. Although this claim is based on affirmative assertions within both the Note and the Trust Deed, Citi's assertions that it is the Lender are not false. As mentioned above, the term "Lender" is defined to be Citi for purposes of those documents, and no requirements are placed on Citi to qualify as the lender. Specifically, the documents do not prohibit Citi from obtaining

the funding for the loan from outside investors.  Furthermore, Hoverman has not alleged either that Citi failed to provide the funds promised to him in the documents or that someone other than Citi provided the promised funds to him.  Therefore, Citi's assertions that it is the Lender for purposes of the Note and the Trust Deed are not false, and Hoverman has failed as a matter of law to state a claim for intentional or negligent misrepresentation based on those assertions.

Second, Hoverman's allegation that Citi engaged in misrepresentation by withholding the identities of the Note Holder and the Beneficiary cannot constitute misrepresentation because withholding identities does not constitute an affirmative assertion and because Citi is not required to identify those entities under the terms of its contracts.  Because a failure to identify entities, even upon request, is not an affirmative assertion, Citi can be liable for a misrepresentation only if it had a duty to disclose those identities.  The Trust Deed, however, specifically states that "[t]he Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower," and the Trust Deed requires "written notice" to be given to Hoverman only "[i]f there is a change of the Loan Servicer."  (Trust Deed § 20).  Because Hoverman was informed that Citi is still the Loan Servicer, (*See* Compl. ¶ 15), Citi did not have a duty to disclose any identities to Hoverman under the terms of their contracts.  Therefore, because Citi did not make an affirmative assertion and did not have a duty to disclose any identities, Hoverman has failed to state a claim for misrepresentation based on Citi's failure to disclose the requested identities.

Hoverman's third example of Citi's alleged misrepresentation fails for the same reasons as the second.  Citi allegedly made a misrepresentation by not providing Hoverman with requested information regarding its authority to foreclose.  However, withholding information

does not qualify as an affirmative assertion, and none of the relevant documents requires Citi to disclose information regarding its authority to foreclose. Citi also does not have a statutory duty to disclose its authority to foreclose because the statute governing non-judicial foreclosure in Utah does not contain any requirement that the trustee demonstrate his or her authority in order to foreclose. Utah Code Ann. § 57-1-19 *et seq* (West 2011); *see also Marty v. Mortg. Elec. Registration Sys.*, No. 1:10-CV-00033-CW, 2010 U.S. Dist. LEXIS 111209, at *18 n.42 (D. Utah Oct. 19, 2010) (adopting the reasoning of the United States District Court for the District of Arizona and rejecting the "show me the note" argument). The court declines to create a requirement where the legislature chose not to include one. Therefore, the court holds that, under the terms of the relevant documents and the current statute, Citi is not required to demonstrate its authority to foreclose before initiating a foreclosure proceeding.

In addition to not having a duty to disclose information regarding its authority to foreclose, Citi is also identified by the relevant documents as the Loan Servicer with the authority to foreclose. Therefore, even if Citi did have a duty to disclose this information, it arguably met such a duty by stating its authority to foreclose in documents that were accessible by Hoverman. Because failing to disclose information is not an affirmative act and because Citi does not have a duty to disclose its authority to foreclose, Hoverman has not stated a claim for misrepresentation based on Citi's refusal to disclose information regarding its authority to foreclose.

Finally, Hoverman's claim that Citi misrepresented that the loan would not be securitized not only fails to meet Rule 9(b)'s particularity requirements because it fails to provide "the time, place, content, and manner" of the misrepresentation, *Cook v. Zions First Nat'l Bank*, 645 F. Supp. 423, 424-25 (D. Utah 1986), but also fails as a matter of law. Even if Citi represented to

Hoverman that the loan would not be securitized, Hoverman failed to state this claim with the particularity required by Rule 9(b) since he merely stated that "Citi misrepresented that [the] loan would not be securitized." (Compl. ¶ 71). Such a conclusory allegation without mentioning when Citi made that representation, where it made that representation, the content of that representation, or the manner in which the representation was made is not sufficient to meet the heightened pleading standard required for fraudulent claims. Therefore, Hoverman has failed to allege with the required particularity that Citi misrepresented that the loan would not be securitized.

Beyond failing to allege misrepresentation with the required particularity, Hoverman's claim that Citi misrepresented that his loan would not be securitized fails as a matter of law. Hoverman's only factual support for this claim is that Hoverman "never consented explicitly or implicitly to securitization of its loan." (Compl. ¶¶ 21, 60). Because a failure to obtain consent does not constitute an affirmative act, this fact will only support a claim of intentional or negligent misrepresentation if Citi had a duty to obtain consent before securitizing the loan. However, as mentioned above, the Trust Deed specifically states that "[t]he Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower." (Trust Deed § 20). The Trust Deed does not include any other language requiring consent from Hoverman prior to selling the Note or limiting Citi's ability to sell the Note in any way. Therefore, according to the terms of the Trust Deed, Citi could sell the Note in a securitization process, not only without obtaining consent from Hoverman, but also without even *notifying* Hoverman of the sale. Accordingly, Citi did not have a duty to obtain consent from Hoverman before securitizing the loan, and Hoverman has failed to

state a claim for misrepresentation based on Citi's alleged securitization of the loan.

In addition to Hoverman's claims failing as a matter of law, Hoverman's entire Complaint is founded on an incorrect understanding of the legal principles regarding securitization. Underlying Hoverman's claim for misrepresentation, and discussed in detail within his memorandum opposing the Motion to Dismiss, is the concept that Citi lost its authority to execute the Trust Deed and to foreclose on the property upon securitization of the loan. However, the great weight of authority from Federal District Courts around the nation, including the District of Utah, suggests that securitization of loans does not affect the rights of the lender or servicer of the loan to enforce its rights under the loan. *See Marty*, 2010 U.S. Dist. LEXIS 111209; *Foster v. BAC Home Loan Servicing, LP*, No. 2:10-CV-247 TS, 2010 WL 3791976, at *3 (D. Utah Sep. 22, 2010).

In *Marty*, the court provided the following summary of the plaintiff's argument, which is almost identical to Hoverman's argument: "Plaintiff's argument appears to be that when Defendants allegedly transferred the note for securitization, Defendants also lost possession of the trust deed and the authority to foreclose." *Marty*, 2010 U.S. Dist. LEXIS 111209, at *12. In that case, as in this one, the plaintiffs relied on Utah Code Ann. § 57-1-35, which states that "[t]he transfer of any debt secured by a trust deed shall operate as a transfer of the security therefor," to support their conclusion. *See id.*

The *Marty* court suggests that, taken in context, section 57-1-35 applies only to "a post-default trustee's sale" and that any other transaction "is not within the context and purpose" of the statute. *Id.* at *12 n.34. However, even if the statute is applied to transactions outside of post-default trustee's sales, the statute "does not address whether the parties can agree by contract

13

to have someone other than the beneficial owner of the debt act on behalf of that owner to enforce rights granted in a trust deed." *Id.* at *15. In the absence of specific legislative direction on the matter, the *Marty* court held that "there is no reason to conclude that [a party] could not contract . . . to maintain the power to foreclose despite the conveyance of the ownership of the debt as long as [the party] were to act on behalf of those parties who have the ultimate right to collect the debt." *Id.* at *20-21.

This court agrees with the conclusions reached in *Marty*. Citi has the right to contractually retain the power to foreclose even if it chooses to convey the ownership of the debt through the securitization process. The securitization process involves "'a separate contract, distinct from Plaintiff's debt obligations'" under the Note and Trust Deed and does not "free Plaintiff from the terms agreed upon in the Deed of Trust." *Foster v. BAC Home Loan Servicing, LP*, 2010 WL 3791976, *3 (D. Utah Sept. 22, 2010) (quoting *Larota-Florez v. Goldman Sachs Mortgage Co.*, No. 01:09CV1181, 2010 WL 1444026, at *6 (E.D. Va. Apr. 8, 2010)).

Citi specifically contracted, as part of its Trust Deed with Hoverman, that the "Lender at its option . . . may invoke the power of sale and any other remedies permitted by Applicable Law." (Trust Deed ¶ 22). Citi also specifically contracted that, in the event that the Note is sold, "the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer," (Trust Deed ¶ 20), and Hoverman has been informed that the loan is still being serviced by Citi. Therefore, even if Citi securitized Hoverman's loan, Citi retained the right to foreclose on the subject property through its contracts with Hoverman.

Therefore, the court dismisses with prejudice Hoverman's cause of action for intentional or negligent misrepresentation.

### IV. VIOLATION OF UTAH CONSUMER PROTECTION STATUTES

Hoverman's Fourth Cause of Action claims that Citi has violated both the Utah Consumer Sales Practices Act ("UCSPA") and the Utah Truth in Advertising Act by its actions. Citi, however, argues that Hoverman has not alleged any conduct by Citi that violates those acts.

Specifically, Hoverman alleges that Citi has violated both the UCSPA and the Utah Truth in Advertising Act "[t]hrough the actions [it has] taken." (Compl. ¶¶ 78-79). Because those statements constitute legal conclusions and because no additional facts are included to support those conclusions, Hoverman's claims that Citi violated Utah laws fail to meet the required standard to survive a motion to dismiss. In addition, the Utah Truth in Advertising Act is used to prohibit "[d]eceptive trade practices," which "create[] a likelihood of confusion or of misunderstanding," Utah Code Ann. § 13-11a-3(1)(t), but Hoverman has not alleged any conduct by Citi that is not expressly authorized in the Note and/or Deed of Trust. Therefore, Hoverman has failed to state a claim that Citi violated the Utah Truth in Advertising Act through actions inconsistent with the terms of the Note or Trust Deed.

Furthermore, the UCSPA, by its own terms, does not apply to "an act or practice required or specifically permitted by or under federal law, or by or under state law." Utah Code Ann. § 13-11-22(a). Therefore, if a specific law regulates the transaction at issue, then the UCSPA does not apply to that transaction. *Burnett v. Mortg. Elec. Registration Sys.*, No. 1:09CV00069DAK, 2009 U.S. Dist. Lexis 100409, *11-12 (D. Utah Oct. 26, 2009). Based on this principle, the court has previously held that the UCSPA does not apply to trustee conduct under a trust deed because that conduct is governed by "the comprehensive and detailed regulatory scheme of Utah's trust deed statute." *Id.* at *13. Because foreclosures are also governed by the Utah trust deed statute,

15

*see* Utah Code Ann. § 57-1-12, *et seq*, mortgage transactions are governed by the Utah High Cost Home Loan Act, Utah Code Ann. § 61-23-101 to 113, and the Mortgage Lending and Servicing Act, Utah Code Ann. § 70D-2-101, and other aspects of the transactions between Hoverman and Citi are governed by federal laws such as the Truth in Lending Act and the Real Estate Settlement Procedures Act; the UCSPA does not apply to Hoverman's transactions with Citi, even if he had sufficiently alleged conduct in violation of that act.

Therefore, the court dismisses with prejudice Hoverman's cause of action for violating the UCSPA and the Utah Truth in Advertising Act.

## V. QUIET TITLE

Hoverman's Fifth Cause of Action claims that title to the subject property should be quieted in Hoverman because no investors with rights to foreclose have asserted their property interests and because Citi has lost all rights to foreclose on the property by either Citi separating the Trust Deed and Note in the securitization process or by assignees purporting interest in the Trust Deed and Note. Citi argues that Hoverman is not entitled to quieting title in his name because he has not demonstrated his right to title free and clear of the Note and Trust Deed, and again, the court agrees.

In order to succeed in an action to quiet title to real estate, a party must "prevail on the strength of its own claim to title and not on the weakness of a defendant's title or to even its total lack of title." *Gillmore v. Blue Ledge Corp.*, 2009 UT App 230, ¶ 14, 217 P.3d 723. Hoverman completely disregards this standard and bases his claim for title to be quieted in his name on the Defendant's lack of interest in the subject property. His Complaint in this regard proceeds as follows: Citi has "no interest in the subject property" due to its participation in the securitization

process, "no investor . . . with rights to foreclose has asserted its property interest," and therefore title should be quieted in Hoverman unless Citi "can demonstrate any right they claim to foreclose as agents of the investors." (Compl. ¶¶ 83-87). Even assuming all Hoverman's claims are true, even though most of them are simply conclusory allegations, Hoverman's claim fails to meet the required standard for quieting title in his name because his claim for quiet title is based completely on the alleged weakness of defendant's title in the subject property.

Therefore, because Hoverman cannot include any information regarding the strength of his own claim to title, the court dismisses with prejudice Hoverman's cause of action for quiet title.

**VI. DECLARATORY AND INJUNCTIVE RELIEF**

Hoverman's Sixth, and final, Cause of Action requests declaration and injunction to the effect that Citi is not entitled to the subject property and has no right foreclose on the property on its own behalf because Citi has failed to demonstrate a right to foreclose, even after repeated requests from Hoverman that it demonstrate such a right. Although Hoverman lists this request for declaratory and injunctive relief as a separate cause of action in his Complaint, requests for declaratory or injunctive relief are actually remedies for other alleged causes of action and do not qualify as causes of action on their own. *See Bryner v. Utah*, 2010 WL 1253974, at *3 (D. Utah March 24, 2010) (noting that although the plaintiff listed several remedies, such as injunctive relief, under a section entitled "Causes of Action," only two statements actually qualified as causes of action). Because this court holds that Hoverman's other causes of action fail as a matter of law, Hoverman is not entitled to declaratory or injunctive relief as a remedy for any cause of action.

17

Therefore, the court dismisses with prejudice Hoverman's request for the remedy of declaratory and injunctive relief.

## CONCLUSION

For the reasons stated above, Defendant Citi's Motion to Dismiss is GRANTED. All six of Plaintiff's Causes of Action are DISMISSED with prejudice, and the Clerk of Court is directed to close this case.

DATED this 3rd day of August, 2011.

BY THE COURT:

DALE A. KIMBALL
United States District Judge